IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Titus Samuel Thomas, | ) | Case No.: 09-72608-BGC-7 |
| | ) | |
| Debtor. | ) | |
| | | |
| Titus Samuel Thomas, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 13-70008-BGC |
| | ) | |
| Educational Credit | ) | |
| Management Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**Memorandum Opinion on the Defendant's
Amended Motion for Summary Judgment**

The matter before the Court is the <u>Amended Motion for Summary Judgment</u> filed on July 16, 2013, by the defendant, Educational Credit Management Corporation, A.P. Docket No. 39. After notice, a hearing was held on September 23, 2014. Appearing were the plaintiff, pro se, and Ms. Margaret H. Manuel, the attorney for the defendant.

The matter was submitted on the records in this proceeding and this case; the defendant's summary judgment motion and supporting exhibits, including the affidavit of Ms. Lisa A. Thigpen, the defendant's Supervisor of Legal Operations; the plaintiff's answers to the defendant's interrogatories; the defendant's answers to the plaintiff's interrogatories and request for admissions; the two medical records submitted by the plaintiff; and the representations made by the plaintiff at the hearing and accepted by defendant's counsel with respect to the plaintiff's current income and employment.

Based on its consideration of the same, the Court concludes that there remain for resolution no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law.

**I. Findings of Fact**

Mr. Thomas attended the University of Alabama from August 1998 to December 2002, when he graduated with a degree in Criminal Justice. He then attended Faulkner University's Thomas Goode Jones School of Law from August 2003 to May 2006, when

he graduated with a law degree. He paid for his education expenses at both schools with approximately $80,731.17 in student loans. The loans were consolidated in 2006 and the consolidated loan is currently held by the defendant, Educational Credit Management Corporation ("ECMC"). The amount owed by Mr. Thomas on the loan stood at $121,625.71 as of July 15, 2013. Interest accrued thereafter, and continues to accrue, on that amount at the rate of 4.5% per annum. The repayment term of the loan is 30 years.

Mr. Thomas specifically alleges in his complaint, and therefore admits, that the debt represented by the student loan is, "a debt incurred for an educational benefit, overpayment, or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit, or nonprofit institution, or an obligation to repay funds received as an educational benefit, scholarship, or stipend." Complaint to Determine Dischargeability of Student Loan A.P. Docket No. 1. Consequently, that debt is nondischargeable by virtue of 11 U.S.C. § 523(a)(8) unless its repayment will impose an undue hardship on Mr. Thomas.

Since receiving his degrees, Mr. Thomas has been consistently underemployed, working for $9 to $12 an hour. He also has been, and continues to be, a member of the National Guard which requires him to attend drill one weekend a month, for which he is paid $265, and to attend two full weeks each summer for which he is paid an amount not provided to the Court.

Mr. Thomas' most productive full-time employment was as a Supply Clerk with the National Guard from June 25, 2013, until some time not provided to the Court, where he had a gross salary of $1970 per month. Regretfully, he lost that job and is currently unemployed, except for his continued part-time participation in the guard. He has offered no affidavit or other form of evidence to explain why he has not obtained or has been unable to obtain employment in criminal justice or law, which his valuable degrees would ostensibly qualify him for. Nor has he offered any evidence describing what efforts he has made to find employment in his chosen fields.

Mr. Thomas is 34 years old. He has no dependents and suffers from no physical or mental disabilities.

Mr. Thomas made $4,107.36 in payments on his student loan debts prior to defaulting in 2008. The only payments on the loans made since were made involuntarily from $3,578.24 in cumulative offsets of the income tax refunds he was entitled to receive between 2010 and 2013.

Mr. Thomas has not attempted to arrange an income based repayment plan pursuant to 34 C.F.R. § 685.221. According to Ms. Thigpen's affidavit, Mr. Thomas' payment under such a plan would have been only $80 a month at the apex of his earning history. Now, given his meager income, Mr. Thomas' payments under section 685.221 would be nothing.

In Schedule J of his bankruptcy petition, filed on October 8, 2009, Mr. Thomas claimed average monthly living expenses of $2,300. In his request for admissions, filed on May 29, 2013, he tacitly admitted, by asking ECMC to admit the same, that his monthly expenses are $1,155. In his answers to ECMC's interrogatories on July 1, 2013, he represented that his average monthly living expenses are $2,335. He has not offered to explain how he has been paying the living expenses which he itemized on both his Schedule J and in his answers to interrogatories, as his income has been consistently and substantially less than even the lesser of those amounts.

## II. Applicable Law

### A. Summary Judgment Standards

The standards for resolving issues within the context of a summary judgment motion are outlined in the Eleventh Circuit Court of Appeals decision in <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112 (11th Cir. 1993) which includes:

### A. Introduction

Under Fed.R.Civ.P. 56(c), a moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The substantive law applicable to the case determines which facts are material. The district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his or her favor.

In <u>Adickes v. Kress</u>, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Supreme Court instructed the federal courts to employ a two-part framework of shifting burdens to determine whether, as regards a given material fact, there exists a genuine issue precluding summary judgment. The operation of this framework was modified significantly in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The current framework is set out below.

### B. Movant's Initial Burden

The movant's initial burden consists of a responsibility to inform the court of the basis for its motion and to identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. The nature of this responsibility varies, however, depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant would bear the burden of proof at trial.

### 1. For Issues on Which Movant
### Would Bear Burden of Proof at Trial

As interpreted by this court sitting en banc, <u>Celotex</u> requires that for issues on which the movant would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

### 2. For Issues on Which Non-Movant
### Would Bear Burden of Proof at Trial

For issues, however, on which the non-movant would bear the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim in order to discharge this initial responsibility. Instead, the moving party simply may show, that is, point out to the district court--that there is an absence of evidence to support the non-moving party's case. Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial.

### C. Non-Movant's Responsibility Once
### Movant Satisfies Initial Burden

If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. If, however, the movant carries the initial summary judgment burden in one of the ways discussed above, responsibility then devolves upon the non-movant to show the existence of a genuine issue as to the material fact.

### 1. For Issues on Which Movant
### Would Bear Burden of Proof at Trial

For issues on which the movant would bear the burden of proof at trial, the non-movant, in order to avoid summary judgment, must come forward with evidence sufficient to call into question the inference created by the movant's evidence on the particular material fact. Only if after

4

introduction of the non- movant's evidence, the combined body of
evidence presented by the two parties relevant to the material fact is still
such that the movant would be entitled to a directed verdict at trial--that is,
such that no reasonable jury could find for the non-movant --should the
movant be permitted to prevail without a full trial on the issues.

### 2. For Issues on Which Non-Movant Would Bear Burden of Proof at Trial

For issues on which the non-movant would bear the burden of
proof at trial, the means of rebuttal available to the non-movant vary
depending on whether the movant put on evidence affirmatively negating
the material fact or instead demonstrated an absence of evidence on the
issue.  Where the movant did the former, then the non-movant must
respond with evidence sufficient to withstand a directed verdict motion at
trial on the material fact sought to be negated.  Where the movant did the
latter, the non-movant must respond in one of two ways.  First, he or she
may show that the record in fact contains supporting evidence, sufficient
to withstand a directed verdict motion, which was overlooked or ignored
by the moving party, who has thus failed to meet the initial burden of
showing an absence of evidence.  Second, he or she may come forward
with additional evidence sufficient to withstand a directed verdict motion at
trial based on the alleged evidentiary deficiency.

2 F.3d 1115 -1117 (for the sake of clarity and brevity, internal quotation marks, citations, footnotes, indentations, brackets, and ellipses have been omitted).

## B.  Student Loan Dischargeability Standards

## A.  Section 523(a)(8)

Section 523(a)(8) of the Bankruptcy Code provides that a discharge should be granted under 11 U.S.C. § 727:

unless excepting such debt from discharge under this paragraph would
impose an undue hardship on the debtor and the debtor's dependents,
for--

> (A)    (I) an educational benefit overpayment or loan made,
>        insured, or guaranteed by a governmental unit, or
>        made under any program funded in whole or in part
>        by a governmental unit or nonprofit institution; or
>
>        (ii) an obligation to repay funds received as an
>        educational benefit, scholarship, or stipend; or

5

> (B) any other educational loan that is a qualified education
> loan, as defined in section 221(d)(1) of the Internal Revenue
> Code of 1986, incurred by a debtor who is an individual;

11 U.S.C.A. § 523(a)(8).

Therefore, to receive a discharge of his student loan based on "undue hardship," Mr. Thomas must prove: (1) he cannot maintain, based on his current income and expenses, a "minimal" standard of living for himself if forced to repay the loan; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the loan; and (3) he has made good faith efforts to repay the loan. Educational Credit Management Corp. v. Mosley (In re Mosley), 494 F.3d 1320, 1324-1325 (11th Cir. 2007).

### B. Burden of Proof

The individual seeking discharge of a section 523(a)(8) debt has the burden by a preponderance of the evidence to prove all three elements. Id. at 1324-25.

## III. Conclusions of Law

### A. Element One – Mr. Thomas cannot maintain a "minimal" standard of living for himself

Unquestionably, under his present circumstances, Mr. Thomas is unable to house, feed, cloth, and transport himself based on his current income, even if he is not required to make any payments on his student loan. He cannot maintain, based on his current income and expenses, a "minimal" standard of living for himself if forced to repay the loan, or whether he is forced to repay the note or not.

Therefore, Mr. Thomas met his burden of proof on this first element.

### B. Element Two – No additional circumstances exist indicating that Mr. Thomas' present state of affairs is likely to persist for a significant portion of the repayment period of the loan

In contrast, Mr. Thomas has neither submitted any evidence, by affidavit or otherwise, nor pointed to anything in the record which suggests or indicates that his current financial state is likely to persist in the future. To the contrary, his answers to ECMC's interrogatories clearly indicate that his potential for improving his financial situation is excellent; that there is currently nothing in his life which impedes him from improving his economic situation; and that there is no reason to believe that his ability

6

to improve his employment will be impeded by foreseeable future events or circumstances.

Mr. Thomas is a well educated young man, who has no dependents, and suffers from no mental or physical disabilities. Moreover, he is fully equipped with the tools necessary, in the form of his two degrees, to improve his employment situation dramatically. There is no apparent reason he cannot become a lawyer, or law enforcement officer, or seek and obtain any number of law related or law enforcement jobs which pay substantially more than he presently earns. A fortiori, he points to nothing in the record, and has presented nothing in the way of evidence, that suggests any reason which precludes or impedes him from at least being employed full-time at whatever vocation.

After the hearing of this matter, Mr. Thomas submitted two medical records, one documenting a visit to and examination by Dr. James Barnett in Northport, Alabama, on December 27, 2010, and the other documenting a visit to and examination by an unidentified physician at American Family Care in Tuscaloosa, Alabama on September 16, 2014.

The first document reflects complaints by Mr. Thomas of persistent pain in his right leg and wrist. Dr. Barnett offered the following evaluation of Mr. Thomas' condition:

> The patient appears to be well-developed and nourished, no deformities are noted and grooming is appropriate. The patient walks and stands normally without a limp or instability. There is full ROM. Strength appears to be normal. No instability is noted. No new scars are noted. The color of the skin appears to be normal. No masses are present. Fine motor testing is normal. Deep tendon reflexes are normal. Sensation is normal. Coordination is normal. Oriented to time, place and person. Mood and affect are appropriate.

Document Filed by Plaintiff Titus Samuel Thomas on September 23, 2014, A.P. Docket No. 74.

The doctor's assessment is that Mr. Thomas' walking, standing, strength, stability, skin color, fine motor skills, deep tendon reflexes, sensations, coordination, mental orientation, and mood were entirely normal and unaffected by the conditions that he had complained of. There is no suggestion by the doctor that the pain in Mr. Thomas' leg and wrist were in any sense debilitating or otherwise hampered or impeded his ability to work, or think, or perform normal, daily activities, or that he was being prevented by that pain from performing any particular type of vocation or pursuing employment in any particular field. Nor is there any suggestion in that record that Mr. Thomas even told the doctor that the pain in his leg and wrist was hampering his ability to work or find employment.

7

The second record from American Family Care reflects diagnoses of carpal tunnel and tendonitis of the ankle. Treatment prescribed for the carpal tunnel was administration of naproxen, a non-steroidal anti-inflammatory medication. Treatment prescribed for the tendonitis was rest, ice, and elevation of the affected foot. The document does not reflect any assessment by the attending physician how long the carpal tunnel and tendonitis were likely to persist, or what effect, if any, the carpal tunnel and tendonitis were having or likely to have on Mr. Thomas' ability to earn a living or perform any particular activities.

Mr. Thomas's has offered no testimony, whether by affidavit or otherwise, which endeavors to explain the significance of the two medical records. Nor is their significance self-evident. They do not contain diagnoses of debilitating physical maladies, much less debilitating physical maladies that are likely to persist for any significant period in the future. Furthermore, in his answers to ECMC's interrogatories, Mr. Thomas specifically represented under oath that he does not suffer from any physical or mental disability, which would specifically contradict and preclude any inference of disability from the information contained in those documents, even if any such inference had been warranted. Consequently, the two medical records submitted by Mr. Thomas are not probative of any "additional circumstances" which indicate that his present state of affairs is likely to persist for a significant portion of the repayment period of his student loan.

Mr. Thomas has, in the vernacular of <u>Fitzpatrick</u>, failed to respond to the evidence submitted by ECMC with evidence, sufficient to withstand a directed verdict motion at trial, that is, that additional circumstances exist indicating that his present state of affairs is likely to persist for a significant portion of the repayment period of his loan. Therefore, because he has not satisfied this second element of three, he failed to prove that repayment of his student loan would impose an undue hardship on him. Therefore, his debt to Educational Credit Management Corporation cannot be discharged in this case pursuant to section 523(a)(8) of the Bankruptcy Code, 11 U.S.C. § 523(a)(8). Consequently, Educational Credit Management Corporation's <u>Amended Motion for Summary Judgment</u> is due to be granted.

### C. Element Three – Whether Mr. Thomas has made good faith efforts to repay his loan

While it is not legally necessary for the Court to decide the third element of this student loan dischargeability contest, it believes the parties are entitled to finality on this issue.

In regard to that issue, ECMC argues that the materials which it submitted, including the affidavit of Ms. Thigpen and the answers by Mr. Thomas to ECMC's interrogatories, reflect that Mr. Thomas has not made a good faith effort to repay his student loan. Indeed, those materials reflect that Mr. Thomas has made no voluntary payments in six years, not even during the time he was earning the most. The

payments made during that period have been involuntary, resulting from offset by the IRS of tax refunds due Mr. Thomas.  However, given his present meager income, Mr. Thomas' failure to make payments on his student loan since losing his last full-time job is not necessarily indicative of a lack of good faith.  But his failure to voluntarily make any post-2008 payments before losing that job may be.  Moreover, his failure to seek and arrange any deferments, forbearances, or an income based repayment plan pursuant to 34 C.F.R. § 685.221, which, according to that regulation and the materials submitted by ECMC, would have reduced his payments to only $80 a month when he was earning the most, and to substantially less during leaner times, and would virtually eliminate his requirement to make payments during his present stretch of underemployment, suggest a lack of good faith on Mr. Thomas' part.  Furthermore, Mr. Thomas' unexplained, chronic underemployment suggests, at best, a lack of interest in honoring his obligation to repay his loan and, at worst, an intent to disregard and avoid paying the same.  However, $3,578.24 in payments have in fact been made, albeit involuntarily, by Mr. Thomas through tax refund offsets over the past four years.  And it is not apparent how he could have paid any more than that given the modest income he earned during that time.  In any event, it is unnecessary to decide whether or not Mr. Thomas has made a good faith effort to repay his student loan since summary judgment for ECMC is warranted and will be granted on the basis previously stated above, i.e., the absence of additional circumstances indicating that Mr. Thomas' present state of affairs is likely to persist for a significant portion of the repayment period of the loan.

## IV.  Conclusions

Based on the above, the Court finds that because the debtor-plaintiff failed to satisfy all three elements for proving nondischargeability of his student loans, he failed to prove that repayment of his student loan would impose an undue hardship on him.  Therefore, the Court concludes that the debtor's debt to Educational Credit Management Corporation is not dischargeable in this case pursuant to section 523(a)(8) of the Bankruptcy Code, 11 U.S.C. § 523(a)(8). Consequently, Educational Credit Management Corporation's <u>Amended Motion for Summary Judgment</u> is due to be granted.

A separate Order will be entered contemporaneously with this Memorandum Opinion.

Dated: December 8, 2014

/s/Benjamin Cohen
BENJAMIN COHEN
United States Bankruptcy Judge